IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| J. RANDOLPH PARRY ARCHITECTS, P.C.; | ) | |
| WESTRUM HANOVER, LLC; | ) | |
| AMC DELANCEY TRADITIONS OF HERSHEY | ) | |
| PARTNERS, LP; ONE BOYERTOWN | ) | |
| PROPERTIES LP; HCRI PENNSYLVANIA | ) | |
| PROPERTIES, INC.; THE VIEWS AT PINE | ) | |
| VALLEY I, LP; CARE HSL NEWTOWN PROPCO LLC; | ) | |
| LIFEQUEST NURSING CENTER; and TWO | ) | |
| DOUGLASSVILLE PROPERTIES, LP, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GAHC3 BETHLEHEM PA ILF, LLC; GAHC3 | ) | |
| PALMYRA PA ALF, LLC; GAHC3 BOYERTOWN PA | ) | |
| ALF, LLC; CARE HSL HARLEYSVILLE PROPCO LP; | ) | |
| CARE HSL NEWTOWN PROPCO, LP; and | ) | |
| 1180 BEN FRANKLIN WAY LLC, | ) | |
| | ) | |
| Rule 19 Defendants. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The United States of America alleges as follows:

## NATURE OF THE ACTION

1. The United States brings this action to enforce the Fair Housing Act, as amended

("FHA"), 42 U.S.C. §§ 3601-3619, and the FHA's implementing regulations, 24 C.F.R. §§

100.200-100.205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

§§ 12181-12213; and the ADA Standards for Accessible Design, *see* 28 C.F.R. Pt. 36

Appendices A & D ("ADA Standards").  As set forth below, the United States alleges that Defendants—the architect of more than 15 multifamily senior living facilities and the owners of eight of those facilities—have discriminated against persons with disabilities by failing to design and construct covered multifamily dwellings to be accessible to persons with disabilities.

2. The FHA requires that certain multifamily dwellings developed for first occupancy after March 13, 1991, defined in the FHA as "covered multifamily dwellings," contain specified accessibility features to make them accessible to persons with disabilities.  42 U.S.C. § 3604(f).

3. The ADA prohibits the failure to design and construct places of public accommodation built for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities.  42 U.S.C. § 12183(a)(1).  Facilities are not readily accessible to and usable for individuals with disabilities if they do not comply with the requirements of the ADA Standards.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).

5. Venue is proper under 28 U.S.C. § 1391 because all the Defendants reside or resided in this District and a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this District.

## SUBJECT PROPERTIES

6. Defendants have participated in the design and/or construction of one or more of the properties identified in the paragraphs below (collectively, the "Subject Properties"):

7. Traditions of Hanover is an independent living community located at 5300 Northgate Drive, Bethlehem, Pennsylvania 18017.  Traditions of Hanover is a multistory elevator building

and has 115 independent living units.  Traditions of Hanover also has, *inter alia*, public and common-use restrooms for residents and prospective residents, a mail center, dining rooms, laundry rooms, offices, activity and game rooms, lounges, a fitness room, a therapy room, a beauty shop, a bar, a library, a theater, a garden, and a bocce court.  Traditions of Hanover was constructed for first occupancy in 2005.

8. Traditions of Hershey is an independent living and assisted living[1] community located at 100 N. Larkspur Drive, Palmyra, Pennsylvania 17078.  Traditions of Hershey is a multistory elevator building and has 120 units, including 97 independent living and 23 assisted living units. Traditions of Hershey also has, *inter alia*, public and common-use restrooms for residents and prospective residents, laundry rooms, dining rooms, a bar, a fitness room, a mail center, lounges, offices, a library, a computer center, a beauty shop, activity and game rooms, and a theater. Traditions of Hershey was constructed for first occupancy in 2008.

9. Chestnut Knoll is an assisted living and memory care community located at 120 W. 5th Street, Boyertown, Pennsylvania 19512.  Chestnut Knoll has two connected buildings: a multistory elevator building connected by an interior lobby and lounge to a single-story building. Chestnut Knoll has 78 units, including 44 assisted living and 34 memory care units.  Chestnut Knoll also has, *inter alia*, public and common-use restrooms for residents and prospective residents, dining rooms, a mail center, activity rooms, laundry rooms, lounges, a library, a fitness room, a therapy room, offices, and a beauty shop.  Chestnut Knoll was constructed for first occupancy in 2000.[2]

---

[1] Assisted living services include assistance with activities of daily living, including for example, toileting, bathing, dressing, and other activities impacted by mobility-related impairments.  For purposes of clarity, we refer to personal care and assisted living collectively as "assisted living" herein.
[2] Chestnut Knoll built an addition that included four one-bedroom units in approximately 2006.

10. Arbour Square is an independent living, assisted living, and memory care community located at 691-695 Main Street, Harleysville, Pennsylvania 19438. Arbour Square consists of three multistory elevator buildings constructed in three phases.[3] Phase 2, also known as Birches at Arbour Square, has 69 units, including 50 assisted living and 19 memory care units. Phase 2 also has, *inter alia*, public and common-use restrooms for residents and prospective residents, an office, dining rooms, activity rooms, a fitness room, a mail center, a beauty shop, laundry rooms, a theater, and a library. Phase 2 was built for first occupancy in 2009. Phase 3 has 125 independent living units. Phase 3 also has, *inter alia*, offices, a dining room, activity rooms, a mail center, and laundry rooms. In addition, phase 3 is connected through interior hallways to phase 1 and shares other public and common-use spaces with phase 1. Phase 3 was built for first occupancy in 2014.

11. Cedar Views Apartments is an independent living community located at 300 Ernest Way, Philadelphia, Pennsylvania 19111. Cedar Views Apartments is part of a larger retirement community called the Villages at Pine Valley. Cedar Views Apartments is a multistory elevator building and has 89 independent living units. Cedar Views Apartments also has, *inter alia*, public and common-use restrooms for residents and prospective residents, a mail center, and a lounge. Cedar Views Apartments was built for first occupancy in approximately 2006.

12. The Birches is an assisted living and memory care community located at 70 Durham Road, Newtown, Pennsylvania 18940. The Birches has three connected buildings: a multistory elevator building containing assisted living units, a single-story building containing the memory care units, and a central two-story elevator building containing public and common-use areas. The Birches has 91 units, including 50 assisted living and 41 memory care units. The Birches

---

[3] The United States is not alleging violations at Phase 1 at this time.

also has, *inter alia*, public and common-use restrooms for residents and prospective residents, dining rooms, living rooms, a library, a computer room, activity rooms, a theater, fitness rooms, and a laundry room.  The Birches was built for first occupancy in 2016.

13. The Lifequest Nursing Center Addition is an assisted living community located at 2450 John Fries Highway, Quakertown, Pennsylvania 18951.  The Lifequest Nursing Center Addition is part of a larger community called Milford Village.  The Lifequest Nursing Center Addition is a multistory elevator building and has 73 assisted living units.  The Lifequest Nursing Center Addition also has, *inter alia*, public and common-use restrooms for residents and prospective residents, lounges, activity rooms, fitness rooms, a beauty shop, dining rooms, a library, a mail room, and laundry rooms.  The Lifequest Nursing Center Addition was built for first occupancy in approximately 2017.

14. Keystone Villa is an assisted living and memory care community located at 1152 Ben Franklin Highway East, Douglassville, Pennsylvania 19518.  Keystone Villa is part of a larger community called Villa Morlatton and is connected to two other buildings by an elevated walkway.  Keystone Villa is a multistory elevator building and has 82 units, including 54 assisted living and 28 memory care units.  Keystone Villa also has, *inter alia*, public and common-use restrooms for residents and prospective residents, living rooms, dining rooms, offices, a library, a mail center, a computer room, activity rooms, a fitness room, a beauty shop, and laundry rooms.  Keystone Villa was built for first occupancy in 2009.

15. Alcoeur Gardens (Brick) is a memory care community located at 320 Herbertsville Road, Brick Township, New Jersey 08724.  Alcoeur Gardens (Brick) is a multistory elevator building and has 15 memory care units.  Alcoeur Gardens (Brick) also has, *inter alia*, public and common-use restrooms for residents and prospective residents, living areas, a kitchen, a dining

room, offices, and a laundry room.  Alcoeur Gardens (Brick) was constructed for first occupancy in approximately 2007.

16. Alcoeur Gardens (Toms River) is a memory care community located at 1126 Lakewood Road, Toms River, New Jersey 08753.  Alcoeur Gardens (Toms River) is a two-story non-elevator building and has at least 15 memory care units.  Alcoeur Gardens (Toms River) also has, *inter alia*, public and common-use restrooms for residents and prospective residents, living areas, a kitchen, a dining room, offices, a beauty shop, a laundry room, and an activity room. Alcoeur Gardens (Toms River) was constructed for first occupancy in 2010.

17. Church Hill Village is an assisted living and memory care community located at 2 The Boulevard, Newtown, Connecticut 06470.  Church Hill Village has eight single-story residential buildings connected through a two-story elevator building containing public and common-use areas.  Church Hill Village has 69 units, including 49 assisted living and 20 memory care units.  Church Hill Village also has, *inter alia*, public and common-use restrooms for residents and prospective residents, a lobby, a lounge, offices, a fitness room, dining rooms, activity rooms, a beauty shop, laundry rooms, and kitchenettes.  Church Hill Village was built for first occupancy in 2020.

18. Heritage Green is an assisted living and memory care community located at 7080 Brooks Farm Road, Mechanicsville, Virginia 23111.  Heritage Green is a single-story building and has 50 units, including 38 assisted living and 12 memory care units.  Heritage Green also has, *inter alia*, public and common-use restrooms for residents and prospective residents, a lounge, offices, dining rooms, activity rooms, living rooms, a computer room, medical exam rooms, a beauty shop, and a wellness center.  Heritage Green was built for first occupancy in approximately 2015.

19. Homestead is an independent living, assisted living, and memory care community located at 2560 Kuser Road, Hamilton Township, New Jersey 08691.  Homestead is a multistory elevator building containing 195 units, including 96 independent living, 75 assisted living, and 24 memory care units.  Homestead also has, *inter alia*, public and common-use restrooms for residents and prospective residents, a mailroom, dining rooms, a bar, a lounge, fitness areas, activity and game rooms, theaters, offices, a beauty shop, and medical exam rooms.  Homestead was built for first occupancy in 2018.

20. The Villa Rafaella Addition is an assisted living community located at 917 South Main Street, Pleasantville, New Jersey 08232.  The Villa Rafaella Addition is a multistory building served by elevators from the original building and has 17 assisted living units.  The Villa Rafaella Addition also has, *inter alia*, a public and common-use restroom for residents and prospective residents, dining rooms, and a porch.  The Villa Rafaella Addition was built for first occupancy in approximately 2006.

21. Woodbury Mews Colonial House is an assisted living and memory care community located at 122-124 Green Avenue, Woodbury, New Jersey 08096.  Woodbury Mews Colonial House is part of a larger community called Woodbury Mews.  Woodbury Mews Colonial House is a multistory elevator building and has 98 units, including 57 assisted living and 41 memory care units.  Woodbury Mews Colonial House also has, *inter alia*, a public and common-use restroom for residents and prospective residents, dining rooms, lounges, activity rooms, and a laundry room.  Woodbury Mews Colonial House was built for first occupancy in approximately 2002.

## DEFENDANTS

22. Defendant J. Randolph Parry Architects, P.C. ("Parry") is an architectural firm located at 509 Howard Street, Riverton, New Jersey 08077.  Parry is a New Jersey corporation licensed to do business in Pennsylvania.  Parry was the architectural firm for all of the Subject Properties and was involved in their design and construction.

23. Defendant Westrum Hanover, LLC ("Westrum") is a Delaware limited liability company licensed to do business in Pennsylvania.  Westrum's business address is 765 Skippack Pike, Suite 300, Blue Bell, Pennsylvania, 19422.  Westrum owned the Traditions of Hanover Subject Property and was involved in its design and construction.

24. Defendant AMC Delancey Traditions of Hershey Partners, LP ("AMC") is a Pennsylvania limited partnership.  AMC's business address is 718 Arch Street, Suite 400 N, Philadelphia, Pennsylvania, 19106.  AMC owned the Traditions of Hershey Subject Property and was involved in its design and construction.

25. Defendant One Boyertown Properties LP ("Boyertown") is a Pennsylvania limited partnership.  Boyertown's business address is 3662 Knolls Bend Court, Doylestown, Pennsylvania, 18901.  Boyertown owned the Chestnut Knoll Subject Property and was involved in its design and construction.

26. Defendant HCRI Pennsylvania Properties, Inc. ("HCRI") was a Pennsylvania corporation.  HCRI's business address is 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania, 17110.  HCRI owned the Arbour Square Subject Property and was involved in its design and construction.

27. Defendant The Views at Pine Valley I, LP ("Pine Valley") is a Pennsylvania limited partnership.  Pine Valley's business address is 667 Welsh Road, Huntingdon Valley,

Pennsylvania, 19006.  Pine Valley owns the Cedar Views Subject Property and was involved in
its design and construction.

28. Defendant Care HSL Newtown Propco, LLC ("Care HSL") is a Delaware limited
liability company licensed to do business in Pennsylvania.  Care HSL's business address is 600
North Second Street, Harrisburg, Pennsylvania, 17101.  Care HSL owned The Birches Subject
Property and was involved in its design and construction.

29. Defendant Lifequest Nursing Center ("Lifequest") is a Pennsylvania non-profit
corporation.  Lifequest's business address is 2460 John Fries Highway, Quakertown,
Pennsylvania, 18951.  Lifequest owns the Lifequest Nursing Center Addition Subject Property
and was involved in its design and construction.

30. Defendant Two Douglassville Properties, LP ("Douglassville") is a Pennsylvania
limited partnership.  Douglassville's address is 166 Holly Road, Gilbertsville, Pennsylvania,
19525.  Douglassville owned the Keystone Villa Subject Property and was involved in its design
and construction.

31. This complaint refers collectively to the following Defendants as "Defendants":
Parry, Westrum, AMC, Boyertown, HCRI, Pine Valley, Care HSL, Lifequest, and Douglassville.

32. Defendants participated in the design and construction of the Subject Properties.  As
set forth below, the Subject Properties were designed and constructed without the accessibility
features required by the FHA and ADA.  As the entities that owned, designed, and constructed
the Subject Properties, Defendants are liable for the violations of the FHA and ADA at the
Subject Properties.

**RULE 19 DEFENDANTS**

33. GAHC3 Bethlehem PA ILF, LLC is the current owner of the Traditions of Hanover Subject Property and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

34. GAHC3 Palmyra PA ALF, LLC is the current owner of the Traditions of Hershey Subject Property and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

35. GAHC3 Boyertown PA ALF, LLC is the current owner of the Chestnut Knoll Subject Property and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

36. Care HSL Harleysville PropCo. LP is the current owner of the Arbour Square Subject Property and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

37. Care HSL Newtown Propco LP is the current owner of The Birches Subject Property and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

38. 1180 Ben Franklin Way LLC is the current owner of the Keystone Villa Subject Property and, in that capacity, is named as a necessary party to this lawsuit under Fed. R. Civ. P. 19 in whose absence complete relief cannot be afforded to the United States.

**FACTUAL ALLEGATIONS**

39. The Subject Properties described above were designed and constructed for first occupancy after March 13, 1991.

40. The Subject Properties described above are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

41. The Subject Properties described above contain "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(B).

42. The covered multifamily dwellings at the Subject Properties described above are subject to the accessibility requirements of 42 U.S.C. § 3604(f).

43. The leasing offices, public restrooms, and other public spaces at the Subject Properties described above are places of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.

44. The leasing offices, public restrooms, and other public spaces at the Subject Properties were designed and constructed for first occupancy after January 26, 1993.

45. The leasing offices, public restrooms, and other public spaces at the Subject Properties are required to meet the accessibility requirements of the ADA Standards.

46. The United States obtained and reviewed property plans related to the Subject Properties.  The United States also inspected the exterior routes, public and common-use areas, and one of each unit type at the Traditions of Hanover, Traditions of Hershey, and Chestnut Knoll Subject Properties.  The United States also inspected exterior routes and exterior public and common-use areas at the Arbour Square Subject Property.  These plans and inspections show inaccessible features at covered units, including, but not limited to, doorways that are too narrow, electrical controls mounted too high for people using wheelchairs to reach, inaccessible routes through the units, molded shower surrounds that prevent the later installation of grab bars, and bathrooms and kitchens with insufficient clear floor space in violation of the FHA, 42 U.S.C. § 3604.  The plans and inspections further show inaccessible features in the public and common-

use areas, including, but not limited to, excessive slopes on pedestrian routes, a lack of accessible parking, barriers at primary entrance doors, inaccessible mail boxes, and inaccessible bathrooms, in violation of the FHA, 42 U.S.C. § 3604.

47. These plans and inspections show that the leasing offices, public restrooms, and other public spaces at, at least, the Traditions of Hanover, Traditions of Hershey, Chestnut Knoll, Arbour Square, Alcoeur Gardens (Toms River), and Homestead Subject Properties are not designed and constructed so that they are readily accessible to and usable by individuals with disabilities, in violation of the ADA, 42 U.S.C. § 12183(a)(1).  These spaces also fail to comply with the ADA Standards.  Moreover, similar ADA violations may be present in the public spaces in the other Subject Properties.

48. The following is an illustrative, but not exhaustive, list of inaccessible features created and caused by Defendants in designing and constructing the Subject Properties.

### Traditions of Hanover

49. The inaccessible features at Traditions of Hanover include, but are not limited to:

    a.  barriers in public and common-use walkways leading to building primary entry doors, including running slopes,[4] cross slopes, and level changes that are too steep to allow people using wheelchairs to traverse safely.  For example, there are cross slopes greater than 2%, ramps with slopes greater than 8.33%, landings at door maneuvering spaces greater than 2% slope in all directions, and changes in level at asphalt joints greater than 1/2 inch high;

---

[4]  A "running slope" is "the slope that is parallel to the direction of travel," and a "cross slope" is a slope that is perpendicular to the direction of travel.  ICC/ANSI A117.1-2003.  Running and cross slopes are measured in a ratio of rise to run (or height to length).

b.  barriers at the designated van accessible parking space and access aisle, including running slopes greater than 2%;

c.  barriers at amenities provided onsite, such as the bar serving area, picnic area, trash dumpster, bocce court, and pet waste stations, including a lack of accessible routes from units to the onsite amenities;

d.  barriers at amenities provided onsite, such as the mail facility and shelves in the laundry areas, including amenities mounted at heights too high for people using wheelchairs to reach;

e.  barriers at public and common-use accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

f.  barriers in common-use laundry areas, including a lack of clear floor space for people using wheelchairs to operate the doors or use the sinks;

g.  barriers in public and common-use restrooms, including a lack of clear floor space for people using wheelchairs to use the sinks, toilet centerlines that are greater than 18 inches from the sidewall, inaccessible grab bars, and wall-mounted objects mounted greater than 48 inches high;

h.  outlets in kitchens that are inaccessible to people using wheelchairs because of obstructions caused by appliances;

i.  molded shower surrounds that preclude the later installation of grab bars;

j.  insufficient space in unit kitchens to allow people using wheelchairs to approach and use sinks, stoves, and countertops.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen sinks and stoves and less than a 60-inch clear floor space between opposing countertops; and

k.  insufficient space in unit bathrooms to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**Traditions of Hershey**

50. The inaccessible features at Traditions of Hershey include, but are not limited to:

a.  barriers in the public and common-use walkways leading to building primary entry doors, including running slopes and cross slopes that are too steep to allow people using wheelchairs to traverse safely.  For example, there are cross slopes greater than 2% and ramps with slopes greater than 8.33%;

b.  barriers at building entrances, including power door switches that have less than 30-inch by 48-inch clear floor space to approach and use the devices;

c.  barriers at amenities provided onsite, such as the bar serving area and pet waste stations, including a lack of accessible routes from units to the onsite amenities;

d.  barriers at amenities provided onsite, such as the mail facilities, sharps disposal boxes, and salad bar, including amenities mounted at heights too high or too deep over an obstruction for people using wheelchairs to reach;

e.  barriers at public and common-use accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example, wall-mounted

objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

f.   barriers in public and common-use restrooms, including toilet flush handles mounted on the wall side of the fixture and a lack of pipe protection on sinks;

g.   closet doors that are too narrow, severely limiting the ability of people using wheelchairs to access the closets;

h.   thresholds that are too high.  For example, patio thresholds are unbeveled and exceed 1/4 inch high;

i.   outlets in kitchens that are inaccessible to people using wheelchairs because of obstructions caused by appliances;

j.   molded shower surrounds that preclude the later installation of grab bars;

k.   insufficient space in unit kitchens to allow people using wheelchairs to approach and use the kitchen sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen sinks; and

l.   insufficient space in unit bathrooms to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on sinks.

**Chestnut Knoll**

51. The inaccessible features at Chestnut Knoll include, but are not limited to:

a.   barriers in the public and common-use walkways leading to building primary entry doors, including running slopes, cross slopes, and level changes that are too steep to allow people using wheelchairs to traverse safely.  For example, there are cross slopes greater than 2%, ramps with slopes greater than 8.33%, landings at

door maneuvering spaces greater than 2% slope in all directions, and unbeveled changes in level greater than 1/4 inch high;

b. barriers at the designated van accessible parking space and access aisle, including running slopes greater than 2% and an access aisle less than 5 feet wide;

c. barriers at public and common-use accessible routes, including wall-mounted objects that protrude into the circulation space and could injure people with vision impairments when using the route. For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

d. barriers at amenities provided onsite, such as the raised gardening bed, including a lack of an accessible route from units to the onsite amenities;

e. barriers at amenities provided onsite, including amenities mounted at heights too high for people using wheelchairs to reach;

f. barriers in public and common-use restrooms, including toilet flush handles mounted on the wall side of the toilet, toilet paper and paper towel holders that protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor, and sink faucet handles that require pinching and twisting to operate; and

g. insufficient space in unit bathrooms to allow people using wheelchairs to safely transfer to and from the showers or approach and use the sink. For example, there is less than 30-inch by 48-inch clear floor space to approach and transfer to the showers and centered on the sinks.

16

**Arbour Square**

52. The inaccessible features at Arbour Square include, but are not limited to:

a.   barriers at public and common-use walkways leading to building primary entry doors, including running slopes and cross slopes that are too steep to allow people using wheelchairs to traverse safely.  For example, there are cross slopes greater than 2% and ramps with running slopes greater than 8.33%;

b.   barriers at designated accessible parking spaces and access aisles, including running slopes and cross slopes greater than 2%;

c.   barriers at amenities provided onsite, such as the pet waste station, including a lack of an accessible route from the units to the amenities;

d.   barriers at accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

e.   barriers in common-use laundry areas, including a lack of clear floor space for people using wheelchairs to use the sinks;

f.   barriers in common-use restrooms, including a lack of clear floor space for a person using a wheelchair to approach and use the door;

g.   closet doors in units that are too narrow, severely limiting the ability of people using wheelchairs to access the closets;

h.   insufficient space in unit kitchens to allow people using wheelchairs to approach and use the kitchen sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on sinks; and

    i.   insufficient space in unit bathrooms to allow people using wheelchairs to safely transfer to and from showers and to approach and use the sinks.  For example, there is less than a 30-inch by 48-inch clear floor space to approach and transfer to the showers and centered on the sinks.

**Cedar Views Apartments**

53. The inaccessible features at Cedar Views Apartments include, but are not limited to:

    a.   barriers at amenities provided onsite, such as the mail facilities, including amenities mounted at heights too high for people using wheelchairs to reach;

    b.   closet doorways that are too narrow, severely limiting the ability of people using wheelchairs to access the closets;

    c.   insufficient space in unit kitchens to allow people using wheelchairs to approach and use the kitchen sinks and countertops.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen sinks and less than 60-inch distance between opposing countertops; and

    d.    insufficient space in unit bathrooms to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**The Birches**

54. The inaccessible features at The Birches include, but are not limited to:

    a.   barriers at accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

b.  barriers in a common-use laundry room, including a lack of clear floor space for a person using a wheelchair to enter and turn around in the laundry room;

c.  barriers in the common-use laundry room and activity rooms, including a lack of clear floor space for a person using a wheelchair to use the sinks;

d.  barriers at amenities provided onsite, such as the mail facilities, including amenities mounted at heights too high for people using wheelchairs to reach;

e.  closet doorways that are too narrow, severely limiting the ability of people using wheelchairs to access the closets; and

f.  insufficient space in unit kitchens to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**Lifequest Nursing Center Addition**

55.  The inaccessible features at Lifequest Nursing Center Addition include, but are not limited to:

a.  barriers at amenities provided onsite, such as the mail facilities, including amenities mounted at heights too high for people using wheelchairs to reach;

b.  insufficient space in unit kitchens to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks; and

c.  insufficient space in unit bathrooms to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**Keystone Villa**

56. The inaccessible features at Keystone Villa include, but are not limited to:

    a.   barriers at amenities provided onsite, such as the mail facilities, including amenities mounted at heights too high for people using wheelchairs to reach;

    b.   barriers at common-use bathing facilities, including insufficient clear floor space to approach and use the toilet;

    c.   insufficient space in unit kitchens to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks; and

    d.   insufficient space in unit bathrooms to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**Alcoeur Gardens (Brick)**

57. The inaccessible features at Alcoeur Gardens (Brick) include, but are not limited to:

    a.   closet doorways that are too narrow, severely limiting the ability of people using wheelchairs to access the closets.

**Alcoeur Gardens (Toms River)**

58. The inaccessible features at Alcoeur Gardens (Toms River) include, but are not limited to:

    a.   barriers in the public and common-use routes to the offices and office lobby because the offices are located on the second floor; and

    b.   closet doorways that are too narrow, severely limiting the ability of people using wheelchairs to access the closets.

**Church Hill Village**

59. The inaccessible features at Church Hill Village include, but are not limited to:

    a.  barriers at amenities provided onsite, such as the mail facilities, including amenities mounted at heights too high for people using wheelchairs to reach;

    b.  barriers at accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor; and

    c.  insufficient space in unit kitchens to allow people using wheelchairs to approach and use the kitchen sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**Heritage Green**

60. The inaccessible features at Heritage Green include, but are not limited to:

    a.  closet doorways that are too narrow, severely limiting the ability of people using wheelchairs to access the closets; and

    b.  insufficient space in unit bathrooms to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**Homestead**

61. The inaccessible features at Homestead include, but are not limited to:

    a.  barriers at public and common-use accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example, wall-mounted

objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

b. barriers at amenities provided onsite, such as the bar serving area, including a lack of accessible routes from units to the onsite amenities;

c. barriers at amenities provided onsite, such as the mail facilities, including amenities mounted at heights too high for people using wheelchairs to reach;

d. barriers at common-use activity spaces, including insufficient space to allow people using wheelchairs to approach and use the sinks.  For example, the common-use spaces have less than 30-inch by 48-inch clear floor space centered on the sinks; and

e. closet doorways that are too narrow, severely limiting the ability of people using wheelchairs to access the closets.

**Villa Rafaella Addition**

62. The inaccessible features at the Villa Rafaella Addition include, but are not limited to:

a. insufficient space in unit bathrooms to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

**Woodbury Mews Colonial House**

63. The inaccessible features at Woodbury Mews Colonial House include, but are not limited to:

    a.   insufficient space in unit kitchens to allow people using wheelchairs to approach and use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on the sinks.

## FAIR HOUSING ACT CLAIMS

64. The United States re-alleges and incorporates by reference the allegations set forth above.

65. The conduct of Defendants described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

66. Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

    a.   the public and common-use portions of the dwellings are readily accessible to and usable by persons with disabilities;

    b.   all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by an individual using a wheelchair;

    c.   all premises within such dwellings contain the following features of adaptive design:

        i.   an accessible route into and through the dwelling;

        ii.   light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

        iii.   reinforcements in bathroom walls to allow later installation of grab bars; and

      iv.    usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

67. Defendants, through the actions and conduct referred to in the preceding paragraph, have:

    a.   discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

    b.   discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

    c.   failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205.

68. The conduct of Defendants described above constitutes:

    a.   a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, within the meaning of 42 U.S.C. § 3614(a); and

    b.   a denial to a group of persons of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance, within the meaning of 42 U.S.C. § 3614(a).

69. Persons who may have been the victims of Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries because of the conduct described above.

70. The conduct of Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## AMERICANS WITH DISABILITIES ACT CLAIMS

71. The United States re-alleges and incorporates the allegations set forth above.

72. The Defendants have failed to design and construct the leasing offices and other places of public accommodation at the Subject Properties in a manner required by 42 U.S.C. §12183(a)(1), 28 C.F.R. §§ 36.401 and 36.406, and 28 C.F.R. Part 36, Appendix A.

73. The Defendants' conduct described above constitutes:

    a.  a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and

    b.  unlawful discrimination that raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

74. Persons who have been the victims of the Defendants' discriminatory conduct are aggrieved persons as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries as a result of the conduct described above.

75. The Defendants' conduct described above was intentional, willful, and taken in disregard for the rights of others.

## OTHER MULTIFAMILY PROPERTIES

76. Defendant Parry, directly and/or through its affiliates and/or subsidiaries, has participated in the design and construction of other covered multifamily properties including, but not limited to, Arbour Square located at 1201 Ward Ave., West Chester, Pennsylvania 19380; Daybreak located at 201 Lillian Lane, Lynchburg, Virginia 24502; and an addition to the Zurbrugg Mansion located at 531 Delaware Ave., Delanco, New Jersey 08075.  Parry's pattern

or practice of failing to design and construct dwellings and public and common-use areas in compliance with the FHA and the ADA, as alleged herein, may extend to these other multifamily properties and, absent injunctive relief, to other multifamily properties that are currently being designed and constructed.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an order that:

a.  Declares that the conduct of Defendants, as alleged in this complaint, violates the FHA and ADA;

b.  Enjoins Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

    i.  failing or refusing to bring the dwelling units and public and common-use areas at covered multifamily properties in which each Defendant was or is involved in the design and/or construction into full compliance with the FHA;

    ii.  failing or refusing to bring the public accommodations designed and/or constructed by the Defendants including, but not limited to, the leasing offices, public restrooms, and other public spaces for the Subject Properties, into compliance with the ADA and the ADA Standards;

    iii.  failing or refusing to conduct compliance surveys to determine whether the retrofits ordered in paragraphs (i) and (ii) above or otherwise performed comply with the FHA and ADA;

    iv.  designing or constructing any covered multifamily dwellings and public and common-use areas in the future that do not comply with the FHA and ADA; and

    v.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

c.  Enjoins Defendants and Rule 19 Defendants from engaging in conduct that impedes any retrofits required to bring the Subject Properties, including covered multifamily dwelling units and public and common-use areas, into compliance with the FHA and ADA in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties;

d.  Awards monetary damages under 42 U.S.C. §§ 3614(d)(1)(B) and 12188(b)(2) to all persons harmed by Defendants' discriminatory practices; and

e.  Assesses a civil penalty against each Defendant who participated in the design and construction of a covered multifamily property within the past five years, in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) and 12188(b)(2)(C) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

Dated:  December 11, 2020

Respectfully submitted,

WILLIAM P. BARR
Attorney General

*/s/ Eric S. Dreiband*
ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

*/s/ Sameena Shina Majeed*
SAMEENA SHINA MAJEED
Chief

*/s/ Lauren M. Marks*
ANDREA K. STEINACKER
Special Litigation Counsel
JULIE J. ALLEN
LAUREN M. MARKS
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Phone: (202) 307-6275
Fax: (202) 514-1676
E-mail: Julie.Allen@usdoj.gov
         Lauren.Marks@usdoj.gov

Attorneys for Plaintiff
United States of America

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

J. Randolph Parry Architects, P.C., 509 Howard St., Riverton, NJ 08077

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Burlington, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Julie Allen & Lauren Marks, U.S. Department of Justice, 150 M. St., NE, Washington, DC 20530; 202-307-6275

Attorneys *(If Known)*

Dennis Carletta, O'Toole Scrivo, 14 Village Park Rd., Cedar Grove, NJ 07009

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [x] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 3601 & 42 U.S.C. 12181

Brief description of cause:
The United States alleges that defendants failed to design and construct at least 15 multifamily properties without the required accessibility features.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
12/11/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Lauren Marks

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 150 M St. NE, Washington, DC 20002 _____

Address of Defendant: _____ 509 Howard Street, Riverton, New Jersey 08077 _____

Place of Accident, Incident or Transaction: _____ Throughout Eastern District PA _____

---

***RELATED CASE, IF ANY:***

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/11/2020      s/ Lauren M. Marks      _____

     *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**    *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.**    *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

### ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Lauren Marks _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: 12/11/2020      s/ Lauren M. Marks      _____

     *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)