**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-06249-JMG |
| | : | |
| J. RANDOLPH PARRY ARCHITECTS, P.C., | : | |
| *et al.*, | : | |
| Defendants. | : | |

---

**MEMORANDUM OPINION**

GALLAGHER, J.                                                May 23, 2022

## I.  OVERVIEW

This is a civil rights suit. The United States is seeking to enforce the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") against the owners of certain senior living facilities and against the architect who designed them. The United States claims that these senior living homes fall short of the FHA's and ADA's disability accessibility requirements.

The architect claims that it is not responsible for most, if any, of the facilities' alleged shortcomings. Rather than rely on this position as a defense to liability, however, the architect has attempted to assert three crossclaims against each of its Co-Defendants and to implead thirty-nine additional Defendants into this case on the basis that they are the true parties responsible. In effect, the architect has attempted to transform this case into a construction defect case.

The United States has moved to strike or dismiss the architect's Third-Party Complaint. Two groups of Defendants have also filed motions to dismiss the architect's crossclaims. For the reasons that follow, the Court grants each of these motions.

## II.  FACTUAL BACKGROUND

a.      **Allegations & Procedural History**

The United States brought this lawsuit to address conditions at fifteen facilities across Pennsylvania, New Jersey, Virginia, and Connecticut that allegedly rendered the facilities inaccessible to individuals with disabilities. Second Am. Compl. ("Compl.") ¶¶ 1, 7–21. The United States named fourteen Defendants in its lawsuit.

Seven of those Defendants are entities that owned the facilities at issue when they were first built. *Id.* ¶¶ 23–31. Six of the Defendants are entities that have come to own the facilities but that did not own the properties when they were built. *Id.* ¶¶ 32–37. The remaining Defendant is J. Randolph Parry Architects (the "Architect"), which is the firm that allegedly was responsible for designing and building each of the fifteen facilities. Compl. ¶ 22.

The Architect maintains, however, that it was not involved in designing or constructing at least some of the allegedly inaccessible features. The Architect claims that, insofar as these features are inaccessible, the fault rests with its Co-Defendants and other service providers.

To this end, the Architect filed an Answer asserting three crossclaims—express indemnification, implied indemnification and contribution (the "Crossclaims")—against each Co-Defendant. ECF No. 62. The Architect also filed a Third-Party Complaint against thirty-nine construction service providers asserting the same claims of express indemnification, implied indemnification and contribution. ECF No. 62-1.[1]

---

[1] The Crossclaims and Third-Party Complaint also include a claim for "declaratory relief." *See* J. Randolph Parry Architects' Answer at 21 (ECF No. 62); Third-Party Complaint at 14 (ECF No. 62-1). The Architect does not specify whether it pleads this claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, or Pennsylvania's Declaratory Judgments Act, 42 Pa. C.S. § 7533. Under federal law, declaratory relief is a remedy, not a cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) ("§ 2201 does not create an independent cause of action."). Because federal courts' remedial powers are shaped by Congress rather than by state legislatures, this Court will construe the Architect's pleadings as though they seek declaratory relief as a remedy rather than as a standalone cause of action.

In response, the United States filed a motion to strike or dismiss the Architect's Third-Party Complaint. ECF No. 75. Defendants GAHC3 Bethlehem, GAHC3 Palmyra, and GAHC3 Boyertown filed a motion to dismiss the Architects' Crossclaims in which Defendant LifeQuest joined. ECF Nos. 71, 73. And Defendants One Newtown Properties, HCRI Pennsylvania Properties, Care HSL Newtown PropCo, Care HSL Harleysville Propco, Westrum Hanover, and Boyertown Properties also filed a motion to dismiss the Architects' Crossclaims. These three motions are presently before the Court.

These motions raise a wide variety of challenges to the legal sufficiency of the Crossclaims and Third-Party Complaint. Beyond those challenges, the motions also ask the Court to dismiss the Architect's claims as a matter of discretion. The Court agrees that these claims should be dismissed as a matter of discretion, so the Court does not reach the legal sufficiency of the Architect's claims.

## III.   LEGAL STANDARD

The Architect pleads only one basis for the Court's subject matter jurisdiction over its Crossclaims and Third-Party Complaint: supplemental jurisdiction under 18 U.S.C. § 1367. Crossclaims ¶1; Third-Party Compl. ¶ 41. Under certain circumstances, federal courts have discretion not to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.") (internal quotation marks omitted).

Specifically, a district court may decline to exercise supplemental jurisdiction over a state law claim when (1) the claim raises a "novel or complex issue of State law"; (2) the claim "substantially predominates over the claim . . . over which the district court has original

jurisdiction"; (3) the district court "has dismissed all claims over which it has original

jurisdiction"; or (4) in "exceptional circumstances" where there are "other compelling reasons

for declining jurisdiction." 28 U.S.C. § 1367(c). In determining whether to exercise supplemental

jurisdiction, the court must also consider the principles of "judicial economy, convenience, and

fairness to the litigants." *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284 (3d

Cir. 1993).

## IV.   ANALYSIS

The Architect pleads three claims against each of its Co-Defendants and the Third-Party

Defendants: implied indemnification, express indemnification and contribution. Each of these

causes of action flows from state law. Def.'s Opp. Mot. Strike or Dismiss Third-Party Compl. at

20 (ECF No. 93). If accepted into this case, these state law claims would substantially

predominate over the federal claims upon which this Court's original jurisdiction is founded.

Further, accepting jurisdiction over these claims would not, on balance, serve the principles of

judicial economy, convenience, and fairness to the litigants. Accordingly, the Court will exercise

its discretion under 28 U.S.C. 1367(c)(2) to decline jurisdiction over these claims.

A claim may "substantially predominate" in multiple ways, including with respect to the

"issues" the claim would raise and with respect to the "proof" the claim would require. *United

Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). If the number and complexity of the

issues a state claim would raise or the quantity of evidence a state claim would require would

overwhelm the evidence and issues involved in the federal claim within the court's original

jurisdiction, a court may decline to exercise supplemental jurisdiction. *Borough of W. Mifflin v.

Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (approving of declining supplemental jurisdiction

where "permitting litigation of all claims in the district court can accurately be described as

allowing a federal tail to wag what is in substance a state dog").

 The Architect's claims would inundate this Court with state law issues that have no bearing on the claims within the Court's original jurisdiction. The claims within the Court's original jurisdiction are the United States' claims under the FHA and ADA. To resolve the United States' claims, the Court need only determine whether the facilities at issue are in fact non-compliant under the terms of the FHA and ADA and whether the Defendants were in fact involved in the designing and constructing of those facilities. 42 U.S.C. § 3604(f)(3)(C); 42 U.S.C. 12183(a)(1).

 The Architect's claims would require the Court to reach far beyond these two issues. The Architect's express indemnity claims would require the Court to address a plethora of issues under state contract law to determine whether an express indemnity agreement exists and is not void against public policy. *See, e.g.*, *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 990 (E.D. Pa. 1993) (explaining that express indemnity actions are governed by contract law); 68 P.S. § 491 (declaring certain indemnity contracts requiring owners or contractors to indemnify architects "void as against public policy"). Further, the Court would likely have to engage in a conflicts of law analysis to determine which state's interpretive law applies to each contract. The Architect's implied indemnity claims would require the Court to determine whether the Architect's relationship and agreements with each Co-Defendant and Third-Party Defendant were such that indemnification could be implied and whether the Architect's role in the non-compliance could be characterized as passive. *City of Wilkes-Barre v. Kaminski Bros.*, 804 A.2d 89, 94 (Pa. Commw. Ct. 2002) (limiting recovery to passive tortfeasors). And the Architect's contribution claims would require the Court to determine the apportionment of fault among the Architect, its Co-Defendants and the Third-Party Defendants for each feature of the

facilities that is found non-compliant. 42 Pa. C.S. § 8324.

Because the Architect seeks to implead *thirty-nine* Defendants and has asserted crossclaims against *each* of its thirteen Co-Defendants, the state law issues raised in the Crossclaims and Third-Party Complaint must be multiplied by a factor of *fifty-two*. And the number of these issues will likely continue to grow exponentially as the Architect's Co-Defendants and Third-Party Defendants assert their own state law counterclaims and crossclaims for indemnity or contribution.

In terms of proof—the Architect's claims would require significantly more proof than the claims within this Court's original jurisdiction. To prove its claims, the United States will have to present evidence indicating only that the facilities at issue are covered by the FHA and ADA, that the Defendants had a role in designing and constructing the facilities, and that the features are in fact non-compliant with the statutes. By contrast, the Architect's crossclaims and third-party claims would require the introduction of evidence of the relationships among the parties, their contracts, communications and courses of performance with each other, their relative involvement in designing and constructing the facilities, and possibly even industry custom and practice. And, again, the Architect asserts its claims against fifty-two Defendants, so the additional proof made relevant by the Architect's claims must be multiplied by at least a factor of fifty-two.

The principles of judicial economy, convenience, or fairness to the litigants would not be served by accepting jurisdiction over these state law claims.

It is true that judicial economy tends to be served when related claims are tried in a single proceeding. Efficiently. *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 989 (3d Cir. 1984). Here, however, the savings to judicial economy are reduced by the fact that many of

the Architect's claims may be mooted by the resolution of the United States' claims. If indeed the Architect is found not liable for some of the United States' claims, then the Architect's claims for contribution will become entirely moot because the Architect would not be a joint tortfeasor. 42 Pa. C.S. § 8324 (making contribution available only to "joint *tort-feasors*") (emphasis added). And if the Architect is found liable, then the Architect's claims for implied indemnity will be moot. *Kaminski Bros.*, 804 A.2d at 93 ("If the record provides any basis for finding the plaintiff primarily negligent, it will defeat indemnification."). If this Court accepts jurisdiction over the Architect's claims, the Court will likely have to resolve a bevy of preliminary questions as to the viability of the Architect's claims for indemnity and contribution under state law only to have those questions be rendered moot, and the Court's decisions rendered advisory opinions, by the jury's findings on the merits. Such an outcome would not be in the interest of judicial economy.

And while the Architect might find it more convenient to litigate all its potential claims against every potential defendant in the same case, the inconvenience, cost and delay to the other parties greatly outweighs the Architect's convenience. Accepting jurisdiction over the Architect's claims would likely cause the other parties to undertake expensive discovery and pre-trial litigation on claims that will not even be ripe for decision until after the jury renders a verdict on the claims within this Court's original jurisdiction.

Finally, the principle of fairness to the parties militates against accepting jurisdiction over these claims. The Architect will not be deprived of any defense if the Court declines jurisdiction over its Crossclaims and Third-Party Complaint. Even absent these claims, the Architect may still maintain that it had no role in designing or constructing the facilities' allegedly non-compliant features. And if that position is borne out by the evidence, then the Architect will have

a complete defense to liability. On the other hand, allowing this case to be transformed into a wide-ranging construction defect case would be unfair to the United States, who brought this suit pursuant to its duty to enforce federal civil rights statutes. It would also be unfair to the Architect's Co-Defendants, for whom closure in this matter will be delayed by the time it takes this Court to disentangle the complex web of relationships among the Architect and the Third-Party Defendants.

Quite simply, this case came into federal court as a federal civil rights enforcement action. Accepting supplemental jurisdiction over the Architect's claims would transform this case into a wide-ranging construction defect case. The Architect's state law claims would simply inundate this Court with state contract, tort, contribution and indemnity law issues and the proof related to them. This inundation, and the substantial delay it would cause, would come at the expense of the alleged victims of disability discrimination and the vindication of their federal rights. Rather than sideline the federal rights that are at the core of this case, the Court will decline to exercise supplemental jurisdiction over the Architect's claims.

## V.    CONCLUSION

The Architect's Crossclaims and Third-Party Complaint would inject into this case state law claims that would substantially predominate over the claims within this Court's original jurisdiction. The principles of judicial economy, convenience, and fairness to the litigants would not be served by accepting jurisdiction over these claims. Accordingly, the Court declines to exercise supplemental jurisdiction over the Architect's claims pursuant to 28 U.S.C. § 1367(c)(2).

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge