IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:20-cv-06249-JMG |
| | ) | |
| v. | ) | |
| | ) | |
| J. RANDOLPH PARRY ARCHITECTS, P.C., *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GAHC3 BETHLEHEM PA ILF, LLC, *et al.*, | ) | |
| | ) | |
| Rule 19 Defendants. | ) | |
| | ) | |

## CONSENT ORDER BETWEEN PLAINTIFF UNITED STATES AND J. RANDOLPH PARRY ARCHITECTS, P.C.

## I.   INTRODUCTION

1.      This action is brought by the United States to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189.  Specifically, the United States' Second Amended Complaint alleges that Defendants have engaged in a pattern or practice of discrimination against persons with disabilities and denied rights to a group of persons because of disability by failing to design and construct covered multifamily dwellings with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3), and as required by the ADA, 42 U.S.C. § 12183(a)(1).  *See* ECF No. 41.  These covered multifamily dwelling units include properties for seniors, including independent living, assisted living, and memory support dwelling units.

1

2.    The United States and Defendant, J. Randolph Parry Architects, P.C. ("Parry"), who are signatories to this Consent Order (hereinafter "Order") (collectively "Parties") agree that this Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).  The Parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

3.    Parry denies engaging in any form of wrongful conduct or intentional or willful discrimination against persons with disabilities and states that at all times it has attempted to comply with all applicable federal laws, including those requiring accessibility in design and construction.

4.    The Parties agree that this Order is being entered into to avoid protracted litigation and as a resolution of disputed claims, and should not be deemed an admission of liability by Parry.  This Order addresses all allegations as to each and every property identified in the United States' Second Amended Complaint involving Parry.  This Order resolves only the claims of the United States against Parry.

5.    As indicated by the signatures appearing below, the Parties agree to the entry of this Order.

## II.   RECITALS

### A.    Properties Covered by this Order

6.    As set forth herein, and in the Second Amended Complaint, Parry participated in the design and/or construction of covered multifamily properties including (the "Subject Properties"):

- Traditions of Hanover, Bethlehem, Pennsylvania;

- Traditions of Hershey, Hershey, Pennsylvania;

- Chestnut Knoll, Boyertown, Pennsylvania;

- Arbour Square, Harleysville, Pennsylvania;

- Cedar Views Apartments, Philadelphia, Pennsylvania;

- The Birches, Newtown, Pennsylvania;

- Lifequest Nursing Center Addition, Quakertown, Pennsylvania; and

- Keystone Villa, Douglasville, Pennsylvania.

7.     As set forth herein, and in the Second Amended Complaint, Parry also participated in the design of the following properties ("Other Properties"):

- Alcoeur Gardens, Brick, New Jersey;

- Alcoeur Gardens, Toms River, New Jersey;

- Church Hill Village, Newtown, Connecticut;

- Heritage Green, Virginia;

- Homestead at Hamilton, Hamilton, New Jersey;

- Villa Rafaella Addition, Pleasantville, New Jersey;

- Woodbury Mews Colonial House, Woodbury, New Jersey;

- Arbour Square, West Chester, Pennsylvania;

- Daybreak, Lynchburg, Virginia; and

- Zurbrugg Mansion, Delanco, New Jersey.

**B.     Defendants**

### i. Architect Defendant

8.     Defendant Parry, an architectural firm, participated in the design and/or construction of all of the Subject Properties and Other Properties.

### ii. Owner Defendants

9.     Defendant Westrum Hanover, L.P. ("Westrum") owned the Traditions of Hanover Subject Property and was involved in its design and construction.

10.     Defendant AMC Delancey Traditions of Hershey Partners, LP ("AMC") owned the Traditions of Hershey Subject Property and was involved in its design and construction.

11.     Defendant One Boyertown Properties LP ("Boyertown") owned the Chestnut Knoll Subject Property and was involved in its design and construction.

12.     Defendant HCRI Pennsylvania Properties, Inc. ("HCRI") owned the Arbour Square Subject Property and was involved in its design and construction.

13.     Defendant The Views at Pine Valley I, LP ("Pine Valley") owns the Cedar Views Subject Property and was involved in its design and construction.

14.     Defendant One Newtown Properties, L.P. ("One Newtown") owned The Birches Subject Property and was involved in its design and construction.

15.     Defendant Lifequest Nursing Center ("Lifequest") owns the Lifequest Nursing Center Addition Subject Property and was involved in its design and construction.

16.     Westrum, AMC, Boyertown, HCRI, Pine Valley, One Newtown, and Lifequest are collectively referred to as "Owner Defendants" herein.

### iii. Rule 19 Defendants

17.     GAHC3 Bethlehem PA ILF, LLC, GAHC3 Palmyra PA ALF, LLC, GAHC3 Boyertown, PA ALF, LLC, Care HSL Harleysville PropCo. LP, Care HSL Newtown Propco LP, and 1180 Ben Franklin Way LLC (collectively "Rule 19 Defendants") are named in the United States' Second Amended Complaint as necessary parties to this lawsuit in whose absence complete relief cannot be afforded to the United States.  *See* Fed. R. Civ. P. 19.

C.      **Relevant Requirements of the Fair Housing Act**

18.     The FHA provides that, for residential buildings with an elevator consisting of four or more dwelling units, all units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by persons with disabilities.  42 U.S.C. § 3604(f)(3)(C) and (f)(7)(A).

19.     The FHA provides that, for non-elevator residential buildings with four or more dwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by persons with disabilities.  42 U.S.C. § 3604(f)(3)(C) and (f)(7)(B).

20.     The Accessible Design Requirements in the FHA for covered multifamily dwellings include: (i) the public use and common use portions of such dwellings must be readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings must be sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings must contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space (hereinafter "Accessible Design Requirements").  42 U.S.C. § 3604(f)(3)(C).

21.     Parry agrees that the Subject Properties were designed and constructed for first occupancy after March 13, 1991, and therefore all the units in buildings with elevators and the

ground-floor units in non-elevator buildings at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A) and (B).  As such, those units and the public and common use areas, including the accessible pedestrian routes at the Subject Properties, must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

**D.     Relevant Requirements of the Americans with Disabilities Act**

22.     The ADA and the ADA Standards for Accessible Design, ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A ("ADA Standards"), that have been issued by the U.S. Department of Justice to implement the design and construction requirements of Title III of the ADA, also require that all "public accommodations" designed and constructed for first occupancy after January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act.  42 U.S.C. §§ 12182(a) and 12183(a)(1).  A rental or sales office for an apartment, condominium, or patio home complex is a "public accommodation" under the ADA.  42 U.S.C. § 12181(7)(E).

23.     Parry agrees that the rental offices for the Subject Properties were designed and constructed for first occupancy after January 26, 1993, and  therefore the rental offices and the facilities and privileges provided at those offices such as public parking are required to be designed and constructed in accordance with the standards  promulgated under the ADA.

**ACCORDINGLY, it is hereby ORDERED, ADJUDGED, and DECREED:**

**III.   GENERAL INJUNCTION**

24.   Parry and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with it, are enjoined from discriminating on the basis of disability as prohibited by the FHA and the ADA.

**IV.   RETROFIT FUND**

25.   Within thirty (30) days from the entry of this Order, Parry will deposit the total sum of THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000) in an interest-bearing escrow account ("Retrofit Fund") to be used by the Owner Defendants and Rule 19 Defendants to retrofit the Subject Properties, or to provide additional retrofits subject to the approval of the United States.  Within fifteen (15) days of the establishment of the Retrofit Fund, Parry will submit proof to the United States that the account has been established and the funds deposited.

26.   Any interest accruing to the Retrofit Fund will become a part of the Retrofit Fund and be used as set forth herein.

27.   Parry will be solely responsible for any taxes assessed or owed on any interest earned on money deposited in the Retrofit Fund pursuant to Paragraphs 25-26, above.

28.   The funds in the Retrofit Fund are solely to retrofit the Subject Properties identified in this Order and for other uses consistent with this Order.

29.   The United States shall have sole discretion as to how the funds in the Retrofit Fund are to be distributed, and will consider, among other things, the nature, extent, and cost of the retrofits at each Subject Property.

30.   Within thirty-eight (38) months from the entry of this Order, the United States will provide Parry final instructions for how to distribute the funds in the Retrofit Fund.  The

United States may provide interim instructions for how to distribute funds prior to the final instructions.  Within ten (10) days from receipt of any instructions, Parry will deliver to the United States, by overnight delivery, separate checks payable to an Owner Defendant or Rule 19 Defendant in the amounts stated by the United States.

31.     Parry agrees that as part of this Order that it will not seek to interfere with or oppose the United States' determinations regarding allocation of the Retrofit Fund.

32.     In no event will the aggregate of all such checks exceed the sum of the Retrofit Fund plus accrued interest.

33.     The United States agrees and acknowledges that Parry shall have no obligations, liabilities, debts, duties, or responsibilities to perform, oversee, or inspect any retrofits performed at any of the Subject Properties.

## V.     NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

34.     Parry will maintain and provide to the United States the following information and statements regarding any covered multifamily dwellings currently under construction or intended to be, or which actually are, purchased, developed, built, designed, constructed, or engineered in whole or in part, by it or by any entities in which it or John Randolph Parry has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or larger ownership share[1]:

a.     the name and address of the property;

b.     a description of the property and the individual units;

c.     the name, address and telephone number of the architect(s) from Parry involved with the property;

---

[1] Such information and statements need not be maintained on properties for which Parry bids or expresses an interest but does not become finally involved.

d. the name, address and telephone number of any subconsultants retained or being used by Parry with the property;

e. a statement from all architect(s) from Parry involved with the property acknowledging and describing his/her knowledge of and training in the Accessible Design Requirements of the FHA, the ADA, the ADA Standards, and ANSI A117.1-1986 and certifying that he/she has reviewed the architectural plans for the property and that the design specifications therein fully comply with the requirements of the FHA, the ADA, the ADA Standards, and ANSI A117.1-1986 or a HUD-recognized safe harbor used in its entirety;

g. If the architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or property, Parry will obtain, maintain, and provide to the United States upon request, a statement from the architect(s) from Parry involved with the property that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the Accessible Design Requirements of the Fair Housing Act, the ADA, the ADA Standards, and ANSI A117.1-1986 or a HUD-recognized safe harbor used in its entirety.

35. Thirty (30) days prior to the completion of any architectural drawings for any future project described in Paragraph 34 above, Parry will provide to the United States a copy of any architectural and related construction documents for any newly designed property.  If the United States determines that any element of the architectural drawings discussed above fails to comply with the FHA or ADA, Parry will revise, or cause to be revised, the relevant drawings within thirty (30) days and resubmit the revised drawings to the United States for review.  This

process will continue until the United States is satisfied that the plans comply with the FHA and ADA.

## VI.    SETTLEMENT FUND AND PAYMENTS TO AGGRIEVED PERSONS

36.    Within thirty (30) days from the entry of this Order, Parry will deposit in an interest-bearing escrow account the total sum of SEVENTY FIVE THOUSAND DOLLARS ($75,000) for the purpose of compensating any aggrieved persons whom the United States determines were harmed by Parry's alleged discriminatory housing practices (hereinafter "aggrieved persons").  This money will be referred to as the "Settlement Fund."  Within fifteen (15) days of the establishment of the Settlement Fund, Parry will submit proof to the United States that the account has been established and the funds deposited.

37.    Any interest accruing to the Settlement Fund will become a part of the Settlement Fund and be used as set forth herein.

38.    Parry will be solely responsible for any taxes assessed or owed on any interest earned on money deposited pursuant to Paragraphs 36-37, above.

39.    Within sixty (60) days from the entry of this Order, Parry will publish the Notice to Potential Victims of Alleged Housing Discrimination ("Notice") at Appendix A informing readers of the availability of compensatory funds.  The Notice will be no smaller than three columns by six inches and will be published on three (3) occasions in newspapers of general circulation serving each locality in which a Subject Property is located.  The publication dates will be separated from one another by twenty-one (21) days, and at least two of the publication dates will be on a Sunday.  The Notice will be included in both hardcopy and online versions of the newspaper.  Within ten (10) days of each publication date, Parry will provide the hardcopy newspaper and online newspaper containing the Notice to the United States.

40.     Nothing in this Order will preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

41.     The United States will investigate the claims of allegedly aggrieved persons and will inform Parry as to its determination as to which persons are aggrieved and an appropriate amount of damages (plus accrued interest) that should be paid to each aggrieved person.  Parry agrees that the determinations of the United States will be final, and hereby waives the right to contest the United States' determination in this or any other proceeding.

42.     The United States will submit its final recommendations to the Court for approval in the form of a Stipulated Order.  Within twenty (20) days of the entry of a Court order providing for the distribution of funds, Parry will deliver to the United States, by overnight delivery, a separate check payable to each aggrieved person in the amounts stated in the Stipulated Order.

43.     In no event will the aggregate of all such checks exceed the sum of the Settlement Fund plus accrued interest.

44.     When the United States has received a check from Parry payable to an aggrieved person and a signed release in the form of Appendix B from the aggrieved person, the United States will deliver the check to the aggrieved person and the original, signed release to Parry.  No aggrieved person will be paid until he or she has executed and delivered to the United States the release at Appendix B.

45.     If any money remains in the Settlement Fund after all aggrieved persons identified by the United States have been compensated, the remainder will revert to the Retrofit Fund described in Section IV above.

## VII.   CIVIL PENALTY

46.     Within thirty (30) days from the entry of this Order, Parry will pay a civil penalty of TWENTY-FIVE THOUSAND DOLLARS ($25,000) under 42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest.  This payment will be in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States.

## VIII.   EDUCATIONAL PROGRAM

47.     Within thirty (30) days from the entry of this Order, Parry will provide a copy of this Order to all its agents and employees involved in the design or construction of any covered multifamily dwellings and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement will be substantially similar to the form of Appendix C.

48.     Within thirty (30) days after the date he or she commences an agency or employment relationship with Parry, each new agent or employee involved in the design and construction of any other covered multifamily dwelling will be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement will be substantially similar to the form of Appendix C.

49.     Parry will also ensure that its employees and agents who have authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development, Fair Housing Act Design

Manual, <u>A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act</u>, (August 1996, Rev. April 1998).

50.     Within ninety (90) days from the entry of this Order, Parry and all its employees and agents whose duties, in whole or in part, involve or will involve management authority over the development, design, and/or construction of multifamily dwellings will undergo training on the design and construction requirements of the FHA and the ADA.  The training will be conducted by a qualified individual unconnected to Parry or Parry's attorneys who has been approved in advance by the United States, and any expenses associated with this training will be borne by Parry.  Parry will provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by Parry and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix D.

## IX.     NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

51.     In addition to all other reporting required herein, within one hundred eighty (180) days from the entry of this Order, Parry will submit to the United States an initial report containing the reporting required by Sections V and VIII, and containing the signed statements of Parry and its employees and agents who have completed the training program specified in Section VIII of this Order.  Further, on the anniversary of the entry of this Order, Parry will submit to the United States a report for the reporting required by Sections V on the current and future design and construction, and containing the signed statements of new employees and agents as specified in Section VIII of this Order, except that the last compliance report will be due sixty (60) days prior to the expiration of the Order.  Each compliance report shall also

include the statement of the total balance (with interest) in both the Retrofit Fund and Settlement Fund discussed above.

52.     Parry will advise the United States in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint against any property designed, or constructed by them, or against any employees or agents of Parry working at or for any such property, regarding discrimination on the basis of disability in housing.  Upon reasonable notice, Parry will also provide the United States all information it may request concerning any such complaint.  Parry will also advise the United States, in writing, within fifteen (15) days of the resolution of any complaint.

53.     Parry is required to preserve all records related to this Order and to any other covered multifamily dwellings designed or constructed by it.  Upon reasonable notice to Parry, representatives of the United States will be permitted to inspect and copy any records maintained by Parry relating to compliance with this Order, provided, however, that the United States will endeavor to minimize any inconvenience to Parry from such inspections.

## X.     DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

54.     This Order will remain in effect for ~~five (5) years~~ 42 months* after the date of its entry.

55.     By consenting to entry of this Order, the Parties agree that in the event that Parry engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the FHA, such conduct will constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii).

56.     The Court will retain jurisdiction for the duration of this Order to enforce the terms of the Order; at the expiration of the Order, the case will be dismissed with prejudice.  The United States may move the Court to extend the duration of the Order in the interests of justice.

57.     The Parties will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by Parry to perform, in a timely manner, any act required by this Order or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

## XI.    TIME FOR PERFORMANCE

58.     Any time limits for performance imposed by this Order may be extended by the mutual written agreement of the United States and Parry.

## XII.   RELEASE OF LITIGATION HOLDS

59.     The Parties agree that, as of the date of entry of this Order, litigation is not "reasonably foreseeable" concerning the subject matter of the United States' Second Amended Complaint.  To the extent that the Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the Party is no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves the Parties of any other obligation imposed by this Order.


Dated:  09/28/2022

/s/ John M. Gallagher
_____
JOHN M. GALLAGHER
United States District Court Judge

 * Upon agreement of counsel, this order
will remain in effect for 42 months after the
date of its entry (see ¶ 54).

*FOR THE UNITED STATES:*

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General

*/s/ Lauren M. Marks*
SAMEENA SHINA MAJEED
Chief
MICHAEL S. MAURER
Deputy Chief
JULIE J. ALLEN
LAUREN M. MARKS
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M Street, NE
Washington, DC 20530
Phone: (202) 307-6275
Fax: (202) 514-1676
E-mail: Julie.Allen@usdoj.gov
        Lauren.Marks@usdoj.gov

Attorneys for Plaintiff
United States of America

*FOR DEFENDANT J. RANDOLPH PARRY ARCHITECTS, P.C.:*

Name: John R. Parry, Jr.
Title:  Principal
Dated: September 19, 2022

16

**APPENDIX A**

**NOTICE**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| J. RANDOLPH PARRY ARCHITECTS, PC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**NOTICE TO POTENTIAL VICTIMS OF ALLEGED DISCRIMINATION AGAINST PERSONS WITH DISABILITIES AT THE J. RANDOLPH PARRY ARCHITECTS - <u>DESIGNED COMPLEXES</u>**

On _____, 20__, the United States District Court for the Eastern District of Pennsylvania entered a Consent Order resolving claims in discrimination lawsuit brought by the United States against J. Randolph Parry Architects, PC, who designed eight senior living facilities in Pennsylvania.  The United States alleges that the units and many common use areas (for example, rental offices, routes to amenities, etc.) are not accessible to persons with physical disabilities.  As part of the Consent Order, Defendant J. Randolph Parry Architects, PC has agreed to contribute funds toward retrofits of the units and common use areas to comply with the Fair Housing Act and the Americans with Disabilities Act at the following senior housing and apartment communities:

- Traditions of Hanover, Bethlehem, Pennsylvania;

- Traditions of Hershey, Hershey, Pennsylvania;

- Chestnut Knoll, Boyertown, Pennsylvania;

- Arbour Square, Harleysville, Pennsylvania;

- Cedar Views Apartments, Philadelphia, Pennsylvania;

17

- The Birches, Newtown, Pennsylvania;

- Lifequest Nursing Center Addition, Quakertown, Pennsylvania; and

- Keystone Villa, Douglasville, Pennsylvania.

The Consent Order also establishes a Settlement Fund to compensate persons who have been harmed as a result of this alleged discrimination at any of the above-named complexes. You or members of your family may qualify to recover from the Settlement Fund if you or members of your family allege that you or they:

- were discouraged from living at any of the above-named complexes because of the lack of accessible features of the apartment or the complex;

- rented an apartment but were unable to use, or had difficulties using, portions of your apartment or the complex because they were not accessible (including the inability to have visitors who have disabilities);

- paid to have any portion of your apartment or the complex modified to be more accessible;

- were not informed about, or offered, all available apartment units because of your disability or the disability of someone who would be living with you; or

- requested a reasonable accommodation or reasonable modification for your disability or the disability of someone who was living with you, whether or not it was granted.

*If you believe that you, a family member, or someone you know may have been harmed because of a disability at any of the above-named apartment complexes, please contact the United States Department of Justice at: 1-833-591-0291, and select option numbers (1 4 1).*

*You also may write to United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 4 Constitution Square, 150 M Street, NE, Suite 8000, Washington, D.C. 20530, Attn: DJ 175-62-408.*

*You also may email the United States Department of Justice at **Fairhousing@usdoj.gov***

**APPENDIX B**

**RELEASE OF ALL CLAIMS**

In consideration of and contingent upon the payment of the sum of ($_____ ), in accordance with the Consent Order entered in *United States v. J. Randolph Parry Architects, PC, et al.* (E.D. Pa.), by the United States District Court, I hereby release and forever discharge Defendant J. Randolph Parry Architects, P.C. ("Parry") from any and all liability for any claims, demands, lawsuits, obligations, liabilities, costs, expenses, and causes of action, legal or equitable, I may have against Parry arising out of the Subject Properties and Other Properties as identified in the Consent Order, and issues alleged in this action as of the date of the entry of that Consent Order.  I fully acknowledge and agree that this release of Parry will be binding on my heirs, representatives, executors, successors, administrators, and assigns.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

(Signature)

NAME: _____

ADDRESS: _____

DATE: _____

**APPENDIX C**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER**

On _____, I received copies of and have read the Consent Order entered by the

federal district court in *United States v. J. Randolph Parry Architects, PC, et al.* (E.D. Pa.).  I

have had all of my questions concerning the Consent Order, the Fair Housing Act, and the

Americans with Disabilities Act answered to my satisfaction.


_____
(Signature)


_____
(Print name)


_____
(Position)


_____
(Date)

**APPENDIX D**

**CERTIFICATION OF FAIR HOUSING AND AMERICANS WITH DISABILITIES ACT**

**TRAINING**

On _____, I attended training on the federal Fair Housing Act and Americans with Disabilities Act, including its requirements concerning physical accessibility for people with disabilities.  I have had all of my questions concerning the Fair Housing Act and Americans with Disabilities Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)